UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

|  |  |  |
|---|---|---|
| CARLOS RUIZ, | ) ) ) ) | |
| Petitioner, | ) ) | 3:11-cv-00844-RCJ-WGC |
| vs. | ) ) ) | **ORDER** |
| RENEE BAKER et al., | ) ) | |
| Respondents. | ) ) | |

Petitioner Carlos Ruiz, a prisoner in the custody of the Nevada Department of Corrections pursuant to convictions in the Second Judicial District Court of the State of Nevada, has petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons given herein, the Court denies the Petition.

I.      FACTS AND PROCEDURAL HISTORY

On January 17, 2007, Petitioner Carlos Ruiz was convicted in Nevada state court of first degree murder with the use of a deadly weapon, burglary with the use of a deadly weapon, battery with a deadly weapon causing substantial bodily harm, and battery with a deadly weapon.

The trial court sentenced Petitioner to two consecutive 20–50 year terms of imprisonment on the first conviction, two consecutive terms of 35–156 months imprisonment on the second conviction, a term of 35–156 months imprisonment on the third conviction, and a term of 24–96 months imprisonment on the fourth conviction. The sentences are to run concurrently as to each conviction. The total sentence is therefore 40–100 years imprisonment. The Nevada Supreme Court affirmed the convictions but vacated the sentence on the third conviction because the trial court had improperly enhanced the sentence. The trial court entered a corrected judgment on December 10, 2008.

On August 21, 2008, Petitioner filed a state habeas corpus petition. The trial court appointed counsel, and counsel filed a supplemental petition. The trial court denied the petition, as supplemented, on October 19, 2010. Petitioner appealed, and the Nevada Supreme Court affirmed on September 14, 2011.

Petitioner timely filed a Petition under 28 U.S.C. § 2254 in this Court, alleging eight grounds for relief: (1)–(2) ineffective assistance of trial counsel - multiple claims; (3) ineffective assistance of appellate counsel - multiple claims; (4)–(5) due process and equal protection violations - multiple claims; (6) eighth amendment violation - disproportionate sentence; (7) sixth amendment violation - denial of right to confront witnesses; and (8) due process violation - cumulative error. Respondents moved to dismiss Ground 5 and part of Ground 1 for failure to exhaust. The Court granted the motion as to Ground 5 but denied it as to Ground 1. Respondents have answered, and Petitioner has replied. The Court now adjudicates the Petition.

## II. LEGAL STANDARDS

Section 2254(d) of Title 28, a provision of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), provides the legal standards for a federal court's consideration of a petition for habeas corpus by a prisoner in state custody:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). These standards of review "reflect the . . . general requirement that federal courts not disturb state court determinations unless the state court has failed to follow the law as explicated by the Supreme Court." *Davis v. Kramer*, 167 F.3d 494, 500 (9th Cir. 1999). This Court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). "[A] state court decision is 'contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'" *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529

U.S. 362, 405–06 (2000)). A state court decision is an unreasonable application of clearly established Supreme Court precedent "if the state court identifies the correct governing legal principle from our decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" standard requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

In determining whether a state court decision is contrary to federal law, a federal court looks to the last reasoned decision in the state courts. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803—04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001). Furthermore, "a determination of a factual issue made by a State court shall be presumed to be correct," and a petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### III. ANALYSIS

#### A. Ground 1

##### 1. Ground 1(a)

Petitioner argues that trial counsel was ineffective because the trial court refused to remove counsel based on a conflict of interest, i.e., that Petitioner had opted in to a class action lawsuit against the public defender's office in which trial counsel worked, and also based on a breakdown of the attorney–client relationship. The claim is not cognizable as an ineffective

assistance of counsel claim, because Petitioner admits that trial counsel attempted to withdraw, but that the trial court ordered counsel to continue representation.

The Court could potentially address the claim as trial court error, but the trial court correctly ruled in the state habeas corpus action that this claim of trial error could have been, but was not, brought on direct appeal. In other words, the claim is procedurally defaulted. Nor did the Nevada Supreme Court err when it found that Petitioner had failed to raise a claim of ineffective assistance of appellate counsel (as to the failure of appellate counsel to appeal the denial of the motion to withdraw) in the habeas corpus action in the state trial court.

In summary, there is no ineffective assistance of trial counsel claim based on trial counsel's failure to withdraw. Trial counsel made every effort to withdraw. Any error here must therefore be characterized as trial court error. That alleged error could have been challenged on direct appeal in Nevada because it was not a claim of attorney error but of trial court error.[1] That claim is therefore procedurally defaulted. There remains a potential claim for ineffective assistance of appellate counsel based on appellate counsel's failure to appeal the trial court's

---

1 The Nevada Supreme Court will not find a waiver of ineffective assistance of trial counsel claims if not brought on direct appeal because such claims require an evidentiary hearing that is not available on appeal but only in the trial court via a state habeas corpus petition. *See Daniels v. State*, 688 P.2d 315, 316 (Nev. 1984). Such claims are therefore not procedurally defaulted in a state habeas corpus action if not brought on direct appeal. But even if the trial court's own alleged error in denying the motion to withdraw in the present case could be characterized as a *Strickland*-type violation, no evidentiary hearing is required in the present context because unlike ineffective assistance of trial counsel claims based on trial counsel's own errors, here, the issue was briefed and argued in the trial court directly. There was no lack of an evidentiary record before appeal.

denial of the motion to withdraw. But, as the Court noted in its previous order, a claim of that nature is indeed unexhausted. The Court previously declined to dismiss the present claim for failure to exhaust because it perceived it as a claim of trial court error in denying the motion to withdraw, and Petitioner had exhausted such a claim. However, as the Court has explained herein, the trial court in the state habeas corpus action correctly noted that such a claim is procedurally defaulted. To the extent the Court's previous order is inconsistent with the reasoning herein, the Court reconsiders. The Court previously noted that Petitioner had raised the present claim of trial court error at all levels via his state habeas corpus petition, but the Court failed to note that Petitioner had, as the trial court correctly noted in rejecting the claim as procedurally defaulted in the state habeas corpus action, failed to raise the issue on direct appeal. In any case, the claim is without merit. *See infra* Part III.G. The Court rejects this claim.

   2.   **Ground 1(b)**

Petitioner argues that trial counsel was ineffective in failing to arrange for Petitioner's presence and testimony before the grand jury. There is no constitutional right to present exculpatory evidence to a grand jury, *United States v. Williams*, 504 U.S. 36, 52 (1992), and conviction by a petit jury renders harmless beyond a reasonable doubt any error by a grand jury, *United States v. Mechanik*, 475 U.S. 66, 70 (1986). The Court rejects this claim.

   3.   **Ground 1(c)**

Petitioner argues that trial counsel was ineffective in failing to seek a severance of Petitioner's trial from the trial of his co-defendants. The trial court, however, made no error of

law or fact in rejecting this claim in the state habeas corpus action based on its finding that Petitioner's counsel had joined a motion to sever the trials. Indeed, Petitioner admits in Ground 3, *see infra* Part III.C, that appellate counsel challenged the trial court's failure to grant the motion. Petitioner has not shown by clear and convincing evidence that the trial court in the state habeas corpus action erred in finding that Petitioner's trial counsel had joined a motion to sever. The Court rejects this claim.

### 4. Ground 1(d)

Petitioner argues that trial counsel was ineffective in failing to file certain pre-trial motions. As noted, *see supra* Part III.A.2, a motion challenging the ability to present evidence before the grand jury would have been denied as frivolous. Next, a motion to suppress co-defendants' statements would also have been denied: (1) for lack of standing if Petitioner had sought to assert his co-defendants' Fifth Amendment rights; or (2) on the merits had Petitioner sought to have the statements excluded in vindication of his own Sixth Amendment rights under *Crawford* or *Bruton*. *See infra* Part III.F. The Court rejects this claim.

### 5. Ground 1(e)

Petitioner argues that trial counsel was ineffective in failing to investigate his defense. Petitioner complains that his trial counsel did not interview his girlfriend, Crysta Oliver, or his codefendant's sister, Enlinda Marquez, before trial. Petitioner has not identified any favorable evidence that would have been discovered in such an interview or how it would have changed

the outcome of his trial. Both witnesses were available for cross-examination at trial. The Court rejects this claim.

  **B.**  **Ground 2**

  **1.**  **Ground 2(a)**

Petitioner argues that trial counsel was ineffective in failing to offer an opening statement either before the State's case-in-chief or before the presentation of the defense's case. The trial court in the state habeas corpus action did not err in rejecting this claim. As the state court correctly noted, "keeping a low profile may be a fine strategy for one who claims to have been nothing but the driver of the more culpable defendants." Counsel has wide latitude in trial strategy, *Strickland v. Washington*, 466 U.S. 668, 689 (1984), and the Court cannot say that the state court unreasonably applied this rule in rejecting the present claim. The Court of Appeals has explicitly rejected claims that this kind of tactical decision violates *Strickland*:

> Under the *Strickland* analysis, Moore has not shown that his trial counsel's assistance was ineffective. Moore contends that his counsel *failed to make an opening statement*, failed to cross-examine some witnesses, and failed to call any witnesses in defense. Moore's counsel did cross-examine those witnesses who he believed would implicate Moore, and decided not to cross-examine others. *This is a reasonable tactical decision, as is the decision not to make an opening statement*. Moore does not identify any witnesses that his counsel should have called that could have been helpful. Defense counsel's conduct and trial strategy appear to fall within the wide range of reasonable professional representation.

*United States v. Murray*, 751 F.2d 1528, 1535 (9th Cir. 1985) (Hug, J.) (emphases added). The Court rejects this claim.

///

### 2. Ground 2(b)

Petitioner argues that trial counsel was ineffective in failing to question witnesses about Petitioner's limited role in the crimes. Specifically, Petitioner argues that counsel should have questioned Ms. Oliver more effectively in order to establish that Petitioner was not within earshot of co-defendant Snapp's discussions related to any intent to commit violence. He also complains that trial counsel failed to elicit from police witnesses that no co-defendant inculpated Petitioner via their confessions. Petitioner has not shown (or alleged) that the trial court in the state habeas corpus action erred in finding that evidence was presented at trial showing that Petitioner was indeed present for part of the plan to engage in violence. Indeed, if Petitioner had no knowledge of such a plan, he would have had no basis to affirmatively decline to engage in any violence. There was evidence adduced that Petitioner knew of the plan to engage in violence and drove his co-defendants to the scene knowing of their intent. Any additional questioning directed to emphasizing Petitioner's limited role therefore would not have changed the outcome. Trial counsel did not violate *Strickland* in making these tactical decisions. The Court rejects the claim.

### 3. Ground 2(c)

Petitioner argues that trial counsel was ineffective because he was not familiar enough with "Petitioner's story or the case against him" to properly advise him whether to testify. Petitioner has not shown that the state courts' decisions rejecting this claim were contrary to *Strickland*. Counsel has wide tactical latitude in advising a defendant whether to testify. One

court of appeals has noted that "[c]ounsel's advice not to testify is a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance." *Hutchins v. Garrison*, 724 F.2d 1425, 1436 (4th Cir. 1983).  In the present case, trial counsel could fairly have determined that Petitioner would both incriminate and impeach himself on cross-examination while attempting to exculpate himself.  That is, while attempting to explain that he had not been present during the planning of violence, he would be forced to attempt to explain away the contrary evidence and also to explain how he could reconcile his claim that he agreed to drive his co-defendants to the scene but not to engage in any violence with his claim that he did not know of their intent to commit violence.  The Court rejects this claim.

  **C.**  **Ground 3**

    **1.**  **Ground 3(a)**

  Petitioner argues that appellate counsel was ineffective for failing to file a notice of appeal.  He argues that he had to file a notice of appeal himself.  As Respondents note, Petitioner filed a notice of appeal one week after judgment, at a time when counsel still had three weeks left to file one.  Petitioner has not shown that his counsel would not have filed a timely notice of appeal.  Nor can he show any prejudice, because he did not lose any appellate rights for failure to file a notice of appeal.  The Court rejects this claim.

    **2.**  **Ground 3(b)**

  Petitioner argues that appellate counsel was ineffective for failing to timely file a "fast track" statement or a copy of the motion to sever that the trial court had denied.  Respondents are

correct that no prejudice can be shown from the untimeliness of the "fast track" statement, because the record shows that counsel in fact filed the statement and that the Nevada Supreme Court considered it.  And even assuming for the sake of argument that appellate counsel was ineffective in failing to file a copy of the motion to sever, such that the Nevada Supreme Court declined to consider a challenge to its denial, no prejudice resulted because the basis of the motion to sever was the unmeritorious argument under *Crawford* and *Bruton*. *See infra* Part III.F.  The Court rejects this claim.

### 3. Ground 3(c)

Petitioner argues that appellate counsel was ineffective for failing to "federalize" his direct appeals.  Petitioner does not explain precisely what he means by this.  Petitioner has not identified which claims of federal constitutional violations appellate counsel should have brought on direct appeal but did not.  A state criminal defendant may appeal based on error of both state and federal law, and not every claim of error under state law can be characterized as error under federal law.  Appellate counsel is not ineffective for bringing both kinds of claims.  The Court has elsewhere addressed Petitioner's claims of error under federal law whether brought as direct claims or as indirect *Strickland* claims.  The Court rejects this claim.

### 4. Ground 3(d)

Petitioner argues that appellate counsel was ineffective for failing to raise claims of prosecutorial misconduct.  But Petitioner does not identity any particular misconduct.  His general claims of "prosecutorial misconduct during pre-trial negotiations, closing argument as to

things not in evidence or misrepresentation of evidence, including counsel's characterizations of Ms. Oliver's testimony" are not specific enough for this Court to determine that the state courts erred in granting relief on such a claim. Moreover, Petitioner does not allege that trial counsel objected to any alleged misconduct, which would have rendered a claim of error on appeal futile for failure to preserve an objection at trial. *See Valdez v. State*, 196 P.3d 465, 477 & n.44 (Nev. 2008).

### 5.     Ground 3(e)

Petitioner argues that appellate counsel was ineffective for failing to challenge the use of "general verdicts." Even assuming for the sake of argument that trial counsel made such an objection to preserve the issue on appeal, which Petitioner does not allege, the Court is aware of no right against the use of general verdicts in criminal cases as a general matter, and the Supreme Court has affirmed their use. *See Schad v. Arizona*, 501 U.S. 624, 631–32 (1991) (plurality opinion). A jury need only agree that a defendant committed the offense, and jurors may generally base their conclusions on different theories of both the *actus reus* and the *mens rea*. *Id.* at 632. So long as the requisite number of jurors finds beyond a reasonable doubt that the defendant committed the unlawful act with a sufficiently culpable state of mind, and the crime as defined is not unconstitutionally vague, due process is presumably satisfied. *Id.* at 632–33. The Supreme Court appears willing to make case-by-case exceptions where different theories by which a crime may be proved are so disparate as to invite conviction based on jurors' disagreement not only on the "means" by which a crime was committed but based on a

disagreement on what are properly characterized as "elements" of a crime, such that more specificity in a verdict is required to comport with due process. *See id.* at 638–45 (finding that a general verdict was permitted for a first degree murder charge supportable on both premeditation and felony murder theories as defined by the Arizona Legislature). Petitioner has not identified any case similar to his in which the Supreme Court has ruled that a general verdict was constitutionally insufficient. Indeed, the potential exception described in the *Schad* plurality opinion is so unclear in its contours that it would be difficult for a district court ever to say that a state court had applied the case unreasonably. Appellate counsel's failure to challenge the use of a general verdict was therefore not ineffective assistance. The Court rejects this claim.

      6.      **Ground 3(f)**

Petitioner argues that appellate counsel was ineffective for failing to raise the claims listed in Grounds 1 and 2 of the present Petition on direct appeal. But those claims are for ineffective assistance of trial counsel and cannot be brought on direct appeal in Nevada. Appellate counsel was therefore not ineffective for failing to bring those claims. The Court rejects this claim.

      **D.**      **Ground 4**

Petitioner argues that there was insufficient evidence adduced at trial to show that he had the specific intent to commit any felony upon which the felony murder charge could have been supported. The Court finds that the Nevada Supreme Court did not err in ruling to the contrary. The Nevada Supreme Court noted that the jury had heard testimony that: (1) a co-defendant

entered Petitioner's room very upset; (2) the co-defendant indicated his intent to violently retaliate against his former roommates for having kicked him out of their apartment; (3) Petitioner did not agree to participate in any violence but did agree to drive the co-defendants to the victim's apartment while they were armed with hammers and bats; and (4) Petitioner waited in his car for the co-defendants to return.  The Nevada Supreme Court did not err in finding that a rational juror hearing this evidence could find beyond a reasonable doubt that Petitioner had the specific intent to aid and abet the attack against the victims.  The Court rejects this claim.

      E.      **Ground 6**

Petitioner argues that his 40–100 year sentence for aiding and abetting first degree murder is cruel and unusual in violation of the Eighth Amendment.  Although there is still considerable academic debate over the proper interpretation of the clause, the Supreme Court has ruled that sentences that are "disproportionate to the crime committed" are "cruel and unusual punishments" under the Eighth Amendment. *See Solem v. Helm*, 463 U.S. 277, 284 (1983), *abrogated in part by Harmelin v. Michigan*, 501 U.S. 957 (1991) (Kennedy, J.) (concurring).  In addressing such a challenge, reviewing courts are look to the gravity of the offense, the harshness of the penalty, and sentences imposed on criminals in the same jurisdiction and in other jurisdictions. *Id.* at 290–91.  Courts must "grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals." *Id.* at 290.

Although Petitioner has cited *Solem*, he has not argued under the *Solem* factors directly, but only that his sentence is disproportionate because one or more of his co-defendants received lesser sentences for the crime of robbery with the use of a deadly weapon. The state district court (the last reasoned opinion on Ground 6) did not unreasonably apply Supreme Court precedent in finding that the Eighth Amendment's proportionality principle was not implicated by the sentences received by co-defendants, but only potentially by any disproportionality of Petitioner's own sentences to the crimes he committed. *See generally Harmelin*, 501 U.S. 957 (Kennedy, J.) (concurring).

Two justices in *Harmelin* would have overruled *Solem* completely and rejected the implication of any proportionality principle in the Eighth Amendment (apart from its explicit prohibition against excessive fines). *See id.* (Scalia, J.) (plurality opinion). Justice Kennedy wrote the controlling concurrence, noting that review under the Eighth Amendment's proportionality principle was "narrow" and that the Court had upheld, for example, a 40-year sentence for possession with intent to distribute nine ounces of marijuana. *See id.* at 997–98. Justice Kennedy heavily stressed the deference owed to legislatures in fixing punishments for crimes and concluded that only "grossly disproportionate" sentences implicated the Eighth Amendment. *See id.* at 998–1001. He noted that the comparison of a petitioner's sentence to sentences imposed for other crimes in the same state or for the same crime in other jurisdictions was only a relevant consideration where the crime of which the petitioner had been convicted was not of a "serious nature." *See id.* at 1004. Here, Petitioner's crime was of a serious nature.

And even if it had not been, the Court could not say that the Nevada Legislature could not provide a greater potential sentence for aiding and abetting a murder than for committing a robbery with a deadly weapon.[2] In arguing that he did not commit the violence himself, Petitioner ignores that he has been found guilty of aiding and abetting the violent acts, and he conflates the particulars of his conduct with the nature of the crimes for which he was convicted. Every instance of a crime of course has its own particulars, and, where required or permitted to do so by law, judges consider those particulars in imposing sentences under the applicable statutory range, but the Supreme Court has never indicated that inferior courts conducting proportionality analyses are to inquire into the particulars of a petitioner's offense, as opposed to the nature of the crime of which he was convicted, except where the sentence is death or life imprisonment without the possibility of parole for a juvenile offender, neither of which apply here. *See Miller v. Alabama*, 132 S. Ct. 2455, 2463–64 (2012). Petitioner has presented no clear Supreme Court authority indicating that the sentences for his crimes violate the Eighth Amendment.

      Finally, Petitioner's argument that he did not have the requisite intent to be convicted of the aiding and abetting offenses is directed to the sufficiency of the evidence and is not relevant

---

2 The very logic of the Supreme Court's proportionality cases shows that this is a permissible choice. If death as a punishment is considered as a matter of law to be qualitatively different from lesser punishments such that it mandates special constitutional safeguards, it is difficult to see how a legislature could act unconstitutionally in providing a greater sentence for aiding and abetting a murder than for committing a robbery with a deadly weapon.

to an Eighth Amendment challenge, but only to a due process challenge, which is elsewhere addressed herein.  And the Court rejects the argument that the sentence violates the Eighth Amendment because of the application of the Nevada Supreme Court's "fast track" rules.  That issue does not concern the nature of the punishment.  The Court rejects this claim.

### F.   Ground 7

Petitioner argues that his Sixth Amendment right to confront witnesses against him was violated when the trial court permitted witnesses to testify as to his co-defendants' confessions. Subject to a waiver exception not at issue here, testimonial hearsay is generally inadmissible against a criminal defendant unless the declarant is unavailable and the defendant has had a prior opportunity to cross-examine the declarant as to the relevant statement. *See Crawford v. Washington*, 541 U.S. 36, 54 (2004).  Long before *Crawford*, the Supreme Court had ruled that an out-of-court confession by a co-defendant that also incriminated a defendant could not be admitted at a joint trial, because the defendant could not examine the co-defendant against his will under the Fifth Amendment, thereby frustrating the defendant's confrontation rights under the Sixth Amendment, and the chance of unfair prejudice was too great for a limiting instruction to cure. *See generally Bruton v. United States*, 391 U.S. 123 (1968).  The Supreme Court later ruled, however, that a limiting instruction is sufficient to prevent any constitutional injury if a defendant's name and any reference to his existence are omitted. *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987).

Respondent argues that the Nevada Supreme Court (the last reasoned opinion as to Ground 7) did not unreasonably apply Supreme Court precedent in finding that there was no Sixth Amendment violation in this case, because the testimony as to co-defendants' statements neither named nor mentioned the existence of Petitioner, and a proper limiting instruction was given.  The Court agrees that the *Richardson* safeguards applied at trial were sufficient, and *Crawford* does not apply here because the hearsay testimony adduced concerning Petitioner's co-defendants' confessions simply did not constitute testimony against Petitioner in light of the redactions.  The Court rejects this claim.

### G.     Ground 8

Petitioner argues that his due process rights were violated by cumulative error at trial. Errors that are not great enough to render a trial fundamentally unfair alone may do so when their effects are aggregated. *Chambers v. Mississippi*, 410 U.S. 284, 298 (1973).  Petitioner argues the following errors cumulatively resulted in a fundamentally unfair trial: (1) representation by counsel with a conflict of interest; (2) the tainting of the venire via codefendants' cavalier behavior in their presence; and (3) the tainting of the venire via comments by unidentified members of the venire indicating negative opinions of Hispanic persons and references to gangs.

The first claim of error is procedurally defaulted. *See supra* Part III.A.1.  In any case, it is unlikely that a civil class action lawsuit against the public defenders' office would even constitute a conflict of interest in the present context.  Petitioner does not allege that his trial

counsel would have been personally liable for any damages awarded in such a case, and he almost certainly would have been indemnified for any such damages by law or contract even if the claim had been brought against him in an individual capacity.  And Petitioner has not, as Respondents note, argued that trial counsel actively represented any conflicting interest while representing Petitioner. *See Mickens v. Taylor*, 535 U.S. 162, 175 (2002).  The *Mickens* Court expressly disapproved the Court of Appeals' previous finding of a Sixth Amendment violation arising from, e.g., "counsel's personal or financial interests." *Id.* (citing *United States v. Hearst*, 638 F.2d 1190, 1193 (9th Cir. 1980)).

As to the second claim, it is apparent from the record that two potential jurors remarked to the trial judge in private voir dire that they had noticed the defendants laughing and that it bothered them.  But those comments were not made in the presence of other potential jurors, and both potential jurors making the comments (Potential Jurors 24 and 30) were excused. (*See* Jury Selection Tr. 89:18, 141:19, ECF No. 12-10 to 12-12).  The remainder of the panel was passed for cause without objection to any alleged prejudice caused by co-defendants' behavior.

As to the third claim, it appears Petitioner is referring to Potential Juror 30, who indicated that he was "extremely prejudicial towards Hispanic people." (*See* Tr. 85:14–15).  But it is clear that the conversation occurred out of the presence of any other potential jurors, and Potential Juror 30 was dismissed for cause. (*See id.* at 89:18).  Next, Potential Juror 18 indicated in private that she felt intimidated because of the potential gang affiliation of defendants, although she noted it had nothing to do with race. (*See id.* 150:2–151:19).  She noted, however, that her fears

were alleviated when the trial judge assured her the defendants had no gang affiliations and that she could be fair and impartial. (*See id.* 151:8–23).  There was no need to excuse Potential Juror 18 for cause, both sides passed the panel for cause, (*see id.* 156:6–15), and the defense used its fourth peremptory challenge on her, so she did not sit on the jury, (*see id.* 158:19–22).  The Court rejects this claim.  There was little if any error.  There was certainly not enough error to render the trial fundamentally unfair.

## CONCLUSION

IT IS HEREBY ORDERED that the Petition is DENIED.

IT IS FURTHER ORDERED that the Clerk shall enter judgment and close the case.

IT IS SO ORDERED.

Dated: This 25th day of March, 2015.

_____
ROBERT C. JONES
United States District Judge